UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CHRISTOPHER HAYES                    CIVIL ACTION NO. 6:18-cv-00542

VERSUS                               JUDGE SUMMERHAYS

CIGNA HEALTH & LIFE                  MAGISTRATE JUDGE HANNA
INSURANCE CO., ET AL.

## REPORT AND RECOMMENDATION

In accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court, this matter was referred by the District Judge to the undersigned Magistrate Judge for review, report, and recommendation concerning the merits of the plaintiff's claim for short-term disability benefits.  Considering the arguments submitted in the parties' briefs, the administrative record, and the applicable law, and for the reasons fully explained below, it is recommended that Life Insurance Company of North America's denial of Christopher Hayes's claim for short-term disability benefits should be affirmed and Mr. Hayes's claim should be dismissed with prejudice.

## Background

The plaintiff seeks review of the denial of disability benefits by the administrator of an employee group welfare benefits plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1054, *et seq.*  At all relevant times, the plaintiff, Christopher Hayes, was an employee of

Schlumberger Technology Corporation.    Mr. Hayes was covered by the Schlumberger Group Welfare Benefits Plan ("the Plan"), which included a short-term disability ("STD") benefits component.    The Plan was sponsored and funded by Schlumberger, and the Plan's claim administrator was Life Insurance Company of North America ("LINA").[1]

## The Plan

The Plan states that a Schlumberger employee covered by the Plan is eligible for short-term disability ("STD") benefits when he has missed work for more than five consecutive work days due to a disability.[2]    To remain eligible for STD benefits, a person covered by the Plan must periodically prove that he continues to be disabled.[3]    STD benefits are to be paid from the day the employee is first disabled, paid for up to twenty-six weeks, and paid in an amount equal to one hundred percent

---

[1]    The plaintiff originally sued both LINA and Cigna Health and Life Insurance Company. Because Cigna Health and Life Insurance Company was misidentified as a defendant and is wholly unrelated to the Plan under which Mr. Hayes seeks benefits, the plaintiff's amended complaint omitted the claim against it.  (Rec. Doc. 1 at 1 n. 1; Rec. Doc. 16).  However, the administrative record is replete with references to Cigna.  In particular, the correspondence sent by LINA is on letterhead having a Cigna logo and showing contact information including www.mycigna.com. (See, e.g., Administrative Record at 25, 29, 57).  LINA explained in its removal notice that Cigna Group Insurance is a service mark licensed for use by Cigna entities "including LINA."  (Rec. Doc. 1 at 1 n. 1).  Therefore, in this report and recommendation, this Court has substituted LINA for Cigna in all references to the administrative record.

[2]    Administrative Record at 0476.

[3]    Administrative Record at 0476.

of the employee's base pay.[4]  The Plan defines the terms "disabled" and "disability," as follows:

> Initially, you're "Disabled" if you're (1) unable to perform the normal duties of your job due to an illness or injury and (2) receiving *Appropriate Care and Treatment* for that injury or illness.  (If you're released to full duty with restrictions, you are considered able to perform the duties of your job.)

> After you receive 78 weeks of Plan benefits, you're "Disabled" if you're (1) unable to perform the duties of any occupation (not just your job at Schlumberger) for which you are reasonably suited due to your education, training or experience and (2) receiving Appropriate Care and Treatment for that injury or illness.

> You have a "Disability" only if you're Disabled.[5]

The Plan also explains the effect of an employee's return to work after receiving STD benefits:

> In general, if you return to work (without continued Disability benefits) and you become *Disabled* again, you must remain Disabled for five days in order to become eligible for STD benefits again.  However, if you returned to work for less than 30 consecutive days and your new Disability is due to the same or related condition that caused your first Disability, you will be eligible for STD benefits effective the date you became Disabled again and it will be considered a continuation of the same period of Disability.[6]

---

[4]    Administrative Record at 0473, 0477.

[5]    Administrative Record at 0495.

[6]    Administrative Record at 0476.

The Plan expressly states that LINA was delegated the discretionary authority and responsibility to determine benefits, to interpret the provisions of the Plan, to interpret the facts and circumstances of claims for benefits.[7]  Thus, no benefits will be paid under the Plan unless LINA decides, in its sole discretion, that the claimant is entitled to them.[8]

### Claim Chronology

Mr. Hayes was born on November 16, 1976.[9]  In 2008, Mr. Hayes underwent lumbar surgery performed by Dr. Louis Blanda.[10]  In February 2013, he went to work for Schlumberger.[11]  It is undisputed that, in 2016, he was still working for Schlumberger as an equipment operator.  Mr. Hayes contended that he began experiencing disabling symptoms in 2016.  He explained to one of his treating physicians[12] that he began having mid-back and foot pain during the summer of 2016, received medical treatment for kidney stones and plantar fasciitis, but continued working until August 11, 2016.  On August 15, 2016, Mr. Hayes

---

[7]      Administrative Record at 0487-0488.

[8]      Administrative Record at 0488.

[9]      Administrative Record at 0027, 0068.

[10]     Administrative Record at 0223.

[11]     Administrative Record at 0413.

[12]     Administrative Record at 0222-0226.

4

submitted an STD claim to LINA by telephone.[13]  He reported that his symptoms began around April 1, 2016 and that August 11, 2016 was the first day that he was unable to work due to back and neck pain.[14]  On August 17, 2016, LINA sent a letter to Mr. Hayes requesting that he sign authorization forms so that they could begin obtaining the medical information needed to evaluate his claim.[15]  On August 19, 2016, LINA sent a letter to Dr. Blanda, requesting information concerning his treatment of Mr. Hayes.[16]  On August 22, 2016, LINA sent a letter to Mr. Hayes, advising that his STD benefits would begin on August 18 and were approved through September 22, 2016, provided he remained disabled through that date.[17]

On August 29, 2016, Dr. Blanda's office faxed a form to LINA,[18] indicating that Mr. Hayes had seen Dr. Blanda from April 24, 2008 through May 15, 2012 and then had seen him again starting on June 30, 2016 and had most recently seen him on August 11, 2016.  Dr. Blanda had recently diagnosed Mr. Hayes with plantar fascial fibromatosis and other intervertebral disc displacement, thoracic region.  His

---

[13]     Administrative Record at 0026.

[14]     Administrative Record at 0005, 0023, 0425.

[15]     Administrative Record at 0025-0027.

[16]     Administrative Record at 0029-0030.

[17]     Administrative Record at 0056-0058.

[18]     Administrative Record at 0067-0074.

treatment plan for Mr. Hayes included thoracic epidural steroid injections and obtaining a thoracic MRI. He had injected Mr. Hayes's foot and ankle. Dr. Blanda indicated that Mr. Hayes should not return to work pending the thoracic epidural steroid injections.

Dr. Blanda's treatment note from August 11, 2016[19] indicated that Mr. Hayes was complaining about burning and stabbing upper back pain with radiation down his right arm and shoulder. His foot was much better after an injection at his last visit. He had also had a thoracic MRI. Dr. Blanda indicated that he had diagnosed Mr. Hayes with other intervertebral disc displacement, lumbar region, with an onset date of June 30, 2016; other intervertebral disc displacement, thoracic region with an onset date of August 11, 2016; plantar fascial fibromatosis with an onset date of July 26, 2016; sprain of ligaments of the cervical spine with an onset date of June 30, 2016; and sprain of ligaments of the thoracic spine with an onset date of June 30, 2016. He noted that Mr. Hayes had previously had spinal fusion of the low back and fracture surgery. On examination, Dr. Blanda found tender thoracic spinous processes in the upper thoracic spine with swelling of the soft tissues. The strength and muscle tone in Mr. Hayes's legs was normal. Dr. Blanda noted that the thoracic MRI of August 5, 2016 showed slight disc protrusions at T6-7 and T7-8 as well as

---

[19]    Administrative Record at 0071-0073.

edema of the paraspinous muscles at their insertion at the T3 and T4 spinous processes.  Dr. Banda recommended thoracic epidural steroid injections as well as injection in the area of the thickened inflamed paravertebral musculature.  He was to see Mr. Hayes again in six weeks.  Dr. Blanda issued a work status report, indicating that Mr. Hayes was not to return to work pending treatment.[20]  On September 20, 2016, Mr. Hayes contacted LINA and requested that his STD benefits be continued to September 26, his next office visit with Dr. Blanda.[21]  The same day, LINA wrote Mr. Hayes a letter, explaining that his STD benefits were approved through September 26, 2016.[22]

On September 22, 2016, Dr. Blanda's office faxed a work status report to LINA.[23]  This report indicated that Mr. Hayes had been diagnosed with cervical disc disorder with radiculopathy, unspecified cervical region, a cervical MRI was recommended, and he was not to return to work for six weeks, when his condition would be reevaluated.

On September 27, 2016, LINA wrote to Dr. Blanda requesting updated office visit notes and stating that "an 'off work' note is not sufficient documentation to

---

[20]    Administrative Record at 0074.

[21]    Administrative Record at 0372-0373.

[22]    Administrative Record at 0075-0076.

[23]    Administrative Record at 0082-0083.

certify disability."[24]  That same day, Dr. Blanda's office faxed a form to LINA[25] along with Dr. Blanda's treatment note from September 22, 2016.[26] The form indicated that Dr. Blanda had changed his diagnosis to cervical disc disorder with radiculopathy, unspecified cervical region, and that Mr. Hayes was unable to work pending treatment.  The treatment note indicated that Mr. Hayes had returned for a follow up visit, complaining of unrelenting interscapular pain.  A thoracic epidural injection reportedly did not help but instead worsened his symptoms.  Mr. Hayes reported pain within his entire right shoulder girdle, pain down his right arm with occasional paresthesia, and difficulty sleeping due to the pain.  He reported that his pain was exacerbated by flexion of his neck, sneezing, or coughing.   Upon examination, Dr. Blanda found increased cervical kyphosis and deformity, tenderness at the lower cervical facets and paraspinal musculature, tenderness over the upper left trapezius area, tenderness over the upper right trapezius area, tenderness over the medial border of the left scapula, tenderness over the medial border of the right scapula, tenderness at the left and right paracervical area, restricted left lateral and right lateral bending; restricted left and right lateral rotation.

---

[24]    Administrative Record at 0084-0085.

[25]    Administrative Record at 0095.

[26]    Administrative Record at 0096-0098.

However, strength, muscle tone, upper extremity reflexes, and sensation were all normal.  Dr. Blanda recommended a cervical MRI.

On October 7, 2016, LINA wrote a letter to Mr. Hayes, indicating that his STD benefits had been approved through October 13, 2016.[27]

On October 13, 2016, LINA wrote a letter to Dr. Blanda, requesting updated medical information on Mr. Hayes.[28]  LINA again wrote to Dr. Blanda on October 19, 2016, again requesting updated information regarding Mr. Hayes.[29]

Dr. Blanda faxed a medical request form to LINA on that same date, stating that Mr. Hayes had been diagnosed with cervical disc displacement and spinal stenosis, cervical region, and should not return to work pending a cervical epidural steroid injection.[30]  Dr. Blanda also sent to LINA a copy of the report from Mr. Hayes's MRI of the cervical spine obtained on September 30, 2016.[31]  The radiologist's impressions were mild cervicothoracic levoscoliosis and disc and uncinate pathology resulting in minimal right C2-3 foraminal stenosis; moderate right C3-4 foraminal stenosis; mild left and moderate right C4-5 foraminal stenosis;

---

[27]    Administrative Record at 0099-0100.

[28]    Administrative Record at 0105-0106.

[29]    Administrative Record at 0111.

[30]    Administrative Record at 0123.

[31]    Administrative Record at 0124-0125.

and moderate right C5-6 foraminal stenosis.  Dr. Blanda's treatment note from his visit with Mr. Hayes on October 13, 2016[32] indicated that Mr. Hayes was complaining about pain, stiffness, and swelling especially in the C7 prominence region and below, pain on the right side of his neck, pain in the right trapezius region, and numbness and pain in his right arm.  Examination showed tenderness and swelling about the C7 prominence with palpation, and a limited range of motion secondary to pain.  Dr. Blanda noted that Mr. Hayes was in obvious discomfort.  Dr. Blanda indicated that a discogram might be necessary to get a better idea of what was causing Mr. Hayes's symptoms, stated that Mr. Hayes definitely had an abnormality of C6 and C7 that might require surgery, and stated that he would prefer to try epidural steroid injections before surgery.  He noted that Mr. Hayes had had such injections in his thoracic and low back regions without a lot of relief.  His plan was to refer Mr. Hayes for the injections and then follow up in four to six weeks. He noted that Mr. Hayes's work required heavy lifting and that no light duty work was available.  Dr. Blanda provided a work status report dated October 13, 2016,[33] indicating that Mr. Hayes should remain off work pending the cervical epidural steroid injection.

---

[32]    Administrative Record at 0126-0128.

[33]    Administrative Record at 0130.

On October 21, 2016, LINA wrote to Mr. Hayes advising that STD benefits had been approved through November 10, 2016.[34]

LINA wrote to Dr. Blanda on November 10, 2016 requesting updated treatment notes.[35] Dr. Blanda responded the same day and provided a medical request form[36] indicating that he had diagnosed cervical herniation and stating that Mr. Hayes should not return to work pending cervical injections and possible surgery. He also stated that the treatment notes from that day's office visit were not yet complete.[37]

LINA followed up with Dr. Blanda's office on November 15, November 18, and November 21 to request the complete treatment note.[38]

On November 18, 2016, LINA wrote to Mr. Hayes advising that his STD benefits had been approved through November 10, 2016.[39]

Mr. Hayes contends that, when he attempted to return to work on November 28, 2016, he was told by a supervisor that he could not return to work unless his

---

[34]    Administrative Record at 0140-0141.

[35]    Administrative Record at 0146.

[36]    Administrative Record at 0155.

[37]    Administrative Record at 0153.

[38]    Administrative Record at 0359-0361.

[39]    Administrative Record at 0156-0158.

treating physician signed off on the Validated Functional Job Description for a Schlumberger equipment operator.[40]  The description of the functional demands for Mr. Hayes's position with Schlumberger indicates that persons occupying this position "must be able to safely perform up to medium physical labor as classified by the United States Departments [sic] of Labor."[41]  More specifically, the job description sets forth certain minimum physical capacities required for the job, including the following minimum lifting abilities:

> **Lifting Abilities:**
> - Lift at least 50 lbs from floor to knuckles level on an [sic] frequent basis,
> - Lift at least 50 lbs from floor to waist level on an [sic] frequent basis,
> - Lift at least 25 lbs from floor to shoulder level on an occasional basis, and
> - Carry at least 50 lbs for a minimum distance of 100 feet on an occasional basis[42]

According to Mr. Hayes, he immediately scheduled the next available appointment with Dr. Blanda, which was January 3, 2017, so that he could present the job description for Dr. Blanda's approval.[43]

---

[40]    Rec. Doc. 21 at 5.

[41]    Administrative Record at 0044.

[42]    Administrative Record at 0037.

[43]    Rec. Doc. 21 at 5.

On November 29, 2016, Mr. Hayes spoke with LINA by telephone,[44] indicating that he had been released by his doctor to return to work on light duty but his employer was unwilling to accept the restrictions and limitations imposed. LINA advised that Dr. Blanda would be asked to provide updated information.

On December 1, 2016, LINA wrote a letter to Mr. Hayes advising that his STD benefits would be discontinued on November 10, 2016 because there was no medical evidence supporting his inability to perform the material duties of his occupation.[45] On December 2, 2019, LINA sent a letter to Dr. Blanda requesting office visit notes from November 23, 2016 forward.[46]

Dr. Blanda responded on December 7, 2016.[47] He provided a medical request form stating that his primary diagnosis was other cervical disc displacement, unspecified cervical region, and also stating that Mr. Hayes could return to regular duty on November 28, 2016.[48] Dr. Blanda provided his treatment notes from a visit with Mr. Hayes on November 23, 2016, which stated that Mr. Hayes had a cervical epidural steroid injection with Dr. Staires on November 3. Dr. Blanda's note was

---

[44]    Administrative Record at 0359.

[45]    Administrative Record at 0164-0167.

[46]    Administrative Record at 0168.

[47]    Administrative Record at 0175-0181.

[48]    Administrative Record at 0177.

not clear as to whether Mr. Hayes received pain relief from the injection, although he did have side effects in the form of burning around the injection site and headaches for which he was prescribed medication. Mr. Hayes's strength and reflexes were all normal, as were his gait and station. Dr. Blanda explained that Mr. Hayes had told him he could manage his symptoms conservatively with activity modifications and over-the-counter medications and was not interested in any further treatment at that time. Dr. Blanda released Mr. Hayes to go back to work the following Monday and advised that Mr. Hayes could schedule future appointments on an as-needed basis. Dr. Blanda also sent a work status report to LINA, stating that Mr. Hayes could return to work on November 28, 2016 doing his regular work as defined in his normal occupation.[49] The form does not list any restrictions or limitations on Mr. Hayes's activities.

On December 9, 2016, Mr. Hayes called LINA,[50] stated that he had been released to return to work on light duty about two weeks earlier but his employer was unable to accommodate the restrictions and limitations of his proposed return to work. He indicated that his doctor was going to send in updated medical information.

---

[49]    Administrative Record at 0181.

[50]    Administrative Record at 0355.

On December 13, 2016, LINA sent a letter to Mr. Hayes, advising that no STD benefits were payable after November 25, 2016 and stating that his claim had been closed.[51]

On December 19, 2016, Mr. Hayes spoke with LINA[52] and stated that Dr. Blanda never released him to fully duty without restrictions.  He indicated that he had asked Dr. Blanda to release him because he was going to find another doctor. He also stated that when he brought the work release papers given to him by his employer to Dr. Blanda, Dr. Blanda would not sign off on them.  Mr. Hayes contended that Dr. Blanda restricted him from doing any heavy lifting.

On December 19, 2016, LINA telephoned Dr. Blanda's office and spoke with a nurse who confirmed that Mr. Hayes was restricted from heavy lifting and explained that Dr. Blanda was unable to say exactly what Mr. Hayes could or could not do without a functional capacity evaluation.[53]  On that same date, LINA asked Dr. Blanda to fill out a medical request form detailing the restrictions and limitations that prevented Mr. Hayes from returning to work.[54]

---

[51]     Administrative Record at 0182.

[52]     Administrative Record at 0350.

[53]     Administrative Record at 0351.

[54]     Administrative Record at 0194-0195.

On December 20, 2016, Mr. Hayes again spoke with LINA and stated that he was restricted from heavy lifting.[55]

On December 21, 2016, LINA wrote to Mr. Hayes regarding his STD claim.[56] The letter stated that LINA had received medical information confirming that Mr. Hayes was unable to return to work at that time.  LINA advised that Dr. Blanda would be asked to provide further medical clarification in order to consider paying benefits beyond November 25, 2016.  That same day, LINA sent a letter to Dr. Blanda requesting specific information concerning Mr. Hayes's medical condition.[57] LINA asked Dr. Blanda to identify the examination findings that led him to impose a no heavy lifting restriction, to state how those findings impacted Mr. Hayes's ability to function at home and in the workplace, to detail his updated treatment plan for a safe return to work, and to provide a return to work date without restrictions.

Dr. Blanda executed a work status report on January 3, 2017, indicating that he had seen Mr. Hayes on that date, that he had diagnosed other intervertebral disc displacement in the lumbar and thoracic regions as well as other cervical disc displacement, and stating that Mr. Hays was to remain off work for an estimated six

---

[55]    Administrative Record at 0348-0349.

[56]    Administrative Record at 0184-0185

[57]    Administrative Record at 0188-0189.

months.[58]  Dr. Blanda's abbreviated treatment note from that same date reiterated those diagnoses and indicated that Mr. Hayes was to follow up with Dr. Blanda on February 23, 2017.[59]  Mr. Hayes contends that, at this appointment, Dr. Blanda "declined to approve the Functional Job Description."[60]  However, in these documents supplied by Dr. Blanda, there is no reference to the job description being presented, no reference to Dr. Blanda's failure to approve the job description, and no reference to any functional restrictions or limitations placed by Dr. Blanda on Mr. Hayes's ability to perform the functions of his job.

On January 7, 2017, LINA wrote to Dr. Blanda requesting office visit notes from January 3 forward and asking what examination findings led him to impose the no heavy lifting restriction.[61]

On January 9, 2017, Dr. Blanda's office responded to LINA and provided a medical request form indicating that Mr. Hayes was going to consult with Dr. Muldowny to evaluate his neck and thoracic spine and that he should not return to work for six months.[62]  Dr. Blanda also provided a copy of his complete treatment

---

[58]    Administrative Record at 0198.

[59]    Administrative Record at 0201.

[60]    Rec. Doc. 21 at 6.

[61]    Administrative Record at 0202.

[62]    Administrative Record at 0213.

note from January 3, 2017.[63]  The treatment note stated that Mr. Hayes had lumbar disk surgery on September 24, 2008, had injections for thoracic and cervical pain, and was getting worse.  The note also indicated that Mr. Hayes was "being required to do heavy work."  Mr. Hayes complained of pain in his head, neck, spine, ribs, and pelvis.  He reported radiating pain into his right rib cage, and his low back reportedly hurt occasionally.  Dr. Blanda referred him to Dr. Muldowny and made an appointment for him with Dr. Muldowny on January 17, 2017.  Dr. Blanda also referred Mr. Hayes for a course of physical therapy.  It was noted that Mr. Hayes had a TENS unit that helped.  He was to return to see Dr. Blanda in six to eight weeks and was to remain off work for approximately six months.  Dr. Blanda submitted a work status report similarly indicating that Mr. Hayes was to remain off work for an estimated six months pending further medical treatment.[64]  In these documents, Dr. Blanda did not mention having been presented with a job description for his approval, did not mention failing to approve of a job description, and did not assign any restrictions or limitations on Mr. Hayes's activities except for stating that he should remain off work for six months.

---

[63]     Administrative Record at 0214-0216.

[64]     Administrative Record at 0217.

That same day, January 9, 2017, LINA wrote to Dr. David Muldowny, requesting that he provide copies of his office visit notes regarding Mr. Hayes from January 10, 2017 forward.[65]

On January 18, 2017, Dr. Muldowny responded to LINA's request and submitted a medical request form[66] and his treatment notes from January 10, 2017.[67] Mr. Hayes had reported to Dr. Muldowny that he had started experiencing back pain during the summer of 2016 while driving an 18-wheeler for work and began to have right-sided flank pain as well as right leg pain. He pulled over, went to the restroom, and urinated blood. He explained this to a supervisor, who reportedly told him that there was no relief available and he need to continue his work day if he wanted to keep his job. Mr. Hayes allegedly continued with his work, including lifting an 80 pound object with a man lift, which exacerbated his symptoms. He reported that, over the next five days, he continued to have symptoms and was eventually allowed to return home for medical treatment. He was evaluated at Lafayette General Medical Center's emergency room and diagnosed with a kidney stone and plantar fasciitis. He returned to work until mid back pain and right foot pain resulted in his taking off work on August 11, 2016. Mr. Hayes reported that he had been under Dr.

---

[65]    Administrative Record at 0204.

[66]    Administrative Record at 0221.

[67]    Administrative Record at 0222-0226

Blanda's care since the summer of 2016 but had been forced to miss numerous follow up appointments when his employer would not allow him to miss work. Mr. Hayes reported that he began to experience acute cervical pain with right upper extremity involvement in September 2016. He reported that the cervical epidural steroid injections and injections in the mid back had provided no significant relief. He indicated that he had been referred to Dr. Muldowny for a second opinion and had also been referred to physical therapy. He reported, however, that he could not afford physical therapy because his STD benefits had been discontinued. He gave a history of lumbar surgery with fusion and instrumentation by Dr. Blanda in 2008. He stated that he was not working and had been on STD since August 11, 2016. Upon examination, Dr. Muldowny found that Mr. Hayes's gait and station were normal, his upper extremity reflexes were normal, his coordination was normal, his sensation was intact, there was severe tenderness to palpation of the suboccipital area, and his range of motion was limited due to pain. The strength and tone of his left upper extremity were difficult to assess due to guarding. The strength and tone of his right upper extremity were normal. Dr. Muldowny reviewed Mr. Hayes's MRIs. He recommended that Mr. Hayes begin a course of physical therapy, counseled him to stop smoking, and stated that he should not return to work for approximately six months pending additional treatment. He stated that Mr. Hayes "is currently not able to work because of his symptoms."

On January 20, 2017, LINA wrote to Dr. Blanda, requesting office visit notes from December 2016.[68]

On January 27, 2017, LINA wrote to Mr. Hayes's employer, stating that Mr. Hayes's claim for STD benefits had been denied due to medical information not supporting disability from his own occupation as of January 27, 2017.  The letter further stated that Mr. Hayes's final benefits were paid through November 25, 2016.[69]

LINA wrote to Mr. Hayes the same day,[70] explaining that STD benefits were approved through November 25, 2016 due to a herniated disc and that updated medical documentation was requested from Dr. Blanda and Dr. Muldowny for the time period after November 25 so that his functional ability and qualification for continued STD benefits could be evaluated.  The letter further explained that Mr. Hayes had advised Dr. Blanda, on November 23, 2016, that he was not interested in further treatment and Dr. Blanda released him to return to full time work without restrictions on November 28, 2016.  According to the letter, Mr. Hayes did not return to work on November 28 and Dr. Blanda later placed a lifting restriction on him, which his employer was not able to accommodate.  The letter went on the summarize

---

[68]     Administrative Record at 0227.

[69]     Administrative Record at 0229.

[70]     Administrative Record at 0231-0234.

Dr. Blanda's treatment notes of January 3, 2017 and Dr. Muldowny's treatment notes of January 10, 2017.  The letter then stated that, after reviewing the medical documentation on file, LINA found that Mr. Hayes's functional impairment remained unclear.  Therefore, LINA's nurse case manager had contacted Dr. Blanda for clarification and asked him to provide examination findings that led him to impose the no heavy lifting restriction, an explanation as to how his findings were impacting Mr. Hayes's ability to function at home and in the workplace, an updated treatment plan for a safe return to work, and the estimated return to work date without restrictions.  LINA stated that no response from Dr. Blanda had been received.  LINA concluded that the medical information on file did not demonstrate a functional impairment beyond November 25, 2016.  LINA stated that the claim had been closed and no further benefits were payable.

Mr. Hayes was informed that he could file an appeal,[71] and he advised that he wished to appeal the denial of his STD benefits.[72]  In response, LINA sent him a letter dated January 27, 2017 acknowledging his appeal.[73]

---

[71]    Administrative Record at 0233-0234, 0235.

[72]    Administrative Record at 0021, 0235.

[73]    Administrative Record at 0240-0241.

On February 21, 2017, Dr. Muldowny submitted a medical request form,[74] indicating that Mr. Hayes had been diagnosed with cervical disc disease with radiculopathy and lumbar disc displacement. He indicated that he had last seen Mr. Hayes on that same date, that he would see him again in six weeks, that surgery was a possibility, and that he was not to lift anything heavier than ten pounds or to bend, stoop, or crawl. He stated that Mr. Hayes might be able to return to work in three to six months.

On February 24, 2017, an appeals specialist with LINA wrote to Mr. Hayes, stating that his claim was being reviewed.[75]

On March 6, 2017, LINA sent a letter to Mr. Hayes regarding his STD claim.[76] The letter explained that the claim had been reviewed in its entirety, summarized the medical documentation, and stated that "[a]lthough you were provided with restrictions of no lifting greater than 10 pounds, no bending, stooping or crawling, the medical information currently on file does not support the imposed restrictions beyond November 23, 2016." The letter cited the Plan's provision reading as follows:

> Initially, you're "Disabled" if you're (1) unable to perform the normal duties of your job due to an illness or injury and (2) receiving

---

[74]    Administrative Record at 0256.

[75]    Administrative Record at 0257.

[76]    Administrative Record at 0265-0267.

> Appropriate Care and Treatment for that injury or illness. (If you're released to full duty with restrictions, you are considered able to perform the duties of your job.)

The letter noted that Dr. Blanda had released Mr. Hayes to return to work on November 28, 2016. The letter reviewed Dr. Muldowny's treatment note from January 10, 2017 and went on to state that "[t]here are no documented and quantified functional deficits in your gait, range of motion, muscle strength, power, bulk, or tone. There are no pathologic reflexes documented or evidence of muscle atrophy, joint deformity or instability. There are no documented functional deficits in balance, sensation, circulation, coordination, grip or pinch strength or dexterity." Mr. Hayes was advised of his right to a second appeal and his right to file a lawsuit.

On March 7, 2017, the appeals specialist again wrote to Mr. Hayes, this time informing him that the decision denying him further STD benefits was upheld on appeal.[77] The appeals specialist also wrote to Mr. Hayes's employer that same day, informing Schlumberger of the decision.[78]

## **Law and Analysis**

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined

---

[77]    Administrative Record at 0024, 0259.

[78]    Administrative Record at 0261.

benefits."[79]  It is undisputed that Schlumberger's plan is governed by ERISA.  A person denied benefits under a plan governed by ERISA may file a civil suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[80]  In such a situation, the court is serving an appellate role, and its latitude is narrowly restricted to the ERISA statute and the relevant jurisprudence.[81]

A denial of benefits should be reviewed by the district court using a "de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[82] Schlumberger's plan specifically delegates discretionary authority to LINA in its capacity as the plan administrator.  In such a situation, when the plan grants the administrator discretion to determine claims for benefits, "claimants may recover under ERISA only if the administrator's rejection of their claim was an abuse of discretion."[83]  Therefore, the plaintiff's claim for denial of benefits in this case must

---

[79]    *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations omitted)).

[80]    29 U.S.C. § 1132(a)(1)(B).

[81]    *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 456-57 (5th Cir. 2014).

[82]    *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 115; *Ramirez v. United of Omaha Life Insurance Company*, 872 F.3d 721, 725 (5th Cir. 2017).

[83]    *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir. 2006).

be reviewed for an abuse of discretion, and the plaintiff is entitled to recover only if LINA abused its discretion when it denied his claim for short-term disability benefits. Additionally, regardless of the administrator's ultimate authority to determine benefit eligibility, factual determinations made by the administrator during the course of a benefits review are reviewed for an abuse of discretion.[84] The burden of proof is on the plaintiff to prove that the claim administrator abused its discretion.[85]

In reviewing a plan administrator's discretionary interpretation of an ERISA plan, the Fifth Circuit applies a two-step analysis. First, the court must determine whether the plan administrator correctly interpreted the plan; second, the court must determine whether the plan administrator abused his discretion by reaching the wrong result.[86] In determining whether the plan was correctly interpreted, three factors should be taken into consideration: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different

---

[84]    *Chacko v. Sabre Inc.*, 473 F.3d 604, 610 (5th Cir. 2006); *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000).

[85]    *Nichols v. Reliance Standard Life Insurance Company*, 924 F.3d 802, 808 (5th Cir. 2019) (citing *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015)).

[86]    *Crawford v. Metropolitan Life Insurance Company*, 756 Fed. App'x 350, 352 (5th Cir. 2018); *Gosselink v. American Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992).

interpretations of the plan.[87]  The most important of these factors is whether the administrator's interpretation is consistent with a fair reading of the plan.[88]  "An administrator's interpretation is consistent with a fair reading of the plan if it construes the plan according to the plain meaning of the plan language."[89]  "Only if the court determines that the administrator did not give the legally correct interpretation, must the court then determine whether the administrator's decision was an abuse of discretion."[90]

In ERISA cases, an abuse of discretion occurs only when the plan administrator acted arbitrarily or capriciously.[91]  A claim administrator's decision is arbitrary only when "made without a rational connection between the known facts and the decision or between the found facts and the evidence."[92]  A plan

---

[87]    *Gosselink v. American Tel. & Tel., Inc*., 272 F.3d at 726; *Wildbur v. ARCO Chemical Co*., 974 F.2d at 637-38.

[88]    *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009); *Gosselink v. American Tel. & Tel., Inc*., 272 F.3d at 727.

[89]    *LifeCare Management Services LLC v. Insurance Management Adm'rs Inc*., 703 F.3d 835, 841 (5th Cir. 2013)

[90]    *Tolson v. Avondale Industries, Inc*., 141 F.3d 604, 608 (5th Cir. 1998).

[91]    *Encompass Office Solutions, Incorporated v. Louisiana Health Service & Indemnity Company*, 919 F.3d 266, 282 (5th Cir. 2019); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009).

[92]    *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828 (5th Cir. 1996).  See, also, *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d at 246-47; *Meditrust Financial Services Corp. v. Sterling Chemicals, Inc*., 168 F.3d 211, 215 (5th Cir. 1999).

administrator's decision must be "based on evidence, even if disputable, that clearly supports the basis for its denial."[93]  Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'"[94]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[95]  A court's review of the claim administrator's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end."[96]

A court reviewing a plan administrator's decision generally cannot consider evidence outside the administrative record,[97] which "consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit."[98] In this case, the parties jointly moved for submission of the administrative record,

[93]     *Nichols v. Reliance Standard Life Insurance Company*, 924 F.3d at 808-09 (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d at 246 (citations omitted)).

[94]     *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

[95]     *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d at 273 (citations omitted).

[96]     *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d at 247 (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (citations omitted)).

[97]     *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 515 (5th Cir. 2010).

[98]     *Anderson v. Cytec Industries, Inc.*, 619 F.3d at 516.

which is now included in the suit record,[99] and there are no objections to the contents of the administrative record.

A plan administrator is not required to accord special weight to the opinions of a claimant's physician but, by the same token, a claimant's reliable evidence, including the opinions of a treating physician, may not be arbitrarily discredited.[100] Similarly, the plan administrator is not required to accept the opinions of a claimant's treating physicians regarding the severity of the claimant's condition.[101] "An administrator may rely on an absence of objective evidence of the inability to work as a basis for finding lack of disability and denying benefits.[102] "A plan administrator does not abuse its discretion by making a reasonable request for some objective verification of the functional limitations imposed by a medical or psychological condition, especially when the effects of that condition are not readily ascertainable from treatment and therapy notes."[103] Without some objective measurement of the claimant's functional limitations, a plan administrator has no

---

[99]    The administrative record can be found at Rec. Docs. 20-1 and 20-2. For the sake of consistency, references to the administrative record will be to the page numbers originally assigned in the administrative record rather than to the page numbers assigned in the suit record.

[100]    *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

[101]    *Foster v. Principal Life Insurance Company*, 920 F.3d 298, 307 (5th Cir. 2019).

[102]    *Foster v. Principal Life Insurance Company*, 920 F.3d at 306.

[103]    *Foster v. Principal Life Insurance Company*, 920 F.3d at 306-07 (quoting *Anderson v. Cytec Industries, Inc.*, 619 F.3d at 514).

way to determine whether the claimant is impaired to the point that he cannot perform his job.[104]

## Interpretation of the Plan

Based on a review of the administrative record, as summarized above, this Court concludes that LINA's decision that Mr. Hayes was no longer disabled within the meaning of the Plan after November 25, 2016, was based on a proper interpretation of the Plan, is supported by substantial evidence, and was not an abuse of discretion. Mr. Hayes appears to challenge the factual basis for LINA's denial of his claim for benefits, not LINA's interpretation of the Plan's provisions. It is undisputed that LINA approved Mr. Hayes's claim for STD benefits and paid STD benefits under the Plan to Mr. Hayes from August 18, 2016 to November 25, 2016. It is equally undisputed that LINA denied STD benefits beyond November 25, 2016.

LINA explained its decision to terminate Mr. Hayes's STD benefits in a letter dated January 27, 2017.[105] LINA quoted the following provision from the Plan:

> Initially, you're "Disabled" if you're (1) unable to perform the normal duties of your job due to an illness or injury and (2) receiving *Appropriate Care and Treatment* for that injury or illness. (If you're released to full duty with restrictions, you are considered able to perform the duties of your job.)

---

[104]    *Foster v. Principal Life Insurance Company*, 920 F.3d 298, 306-07 (citing *Anderson v. Cytec Industries, Inc.*, 619 F.3d at 514).

[105]    Administrative Record at 0232-0235.

LINA then stated that Mr. Hayes was off work starting on August 18, 2016 due to a herniated disc but had been released to work full time without restrictions on November 28, 2016.  The letter went on to explain that Mr. Hayes had not returned to work on November 28 after all, and that Dr. Blanda later placed a lifting restriction on him that could not be accommodated by his employer.  LINA summarized Dr. Blanda's treatment note from January 3, 2017 and Dr. Muldowny's treatment note from January 10, 2017.  LINA stated that Dr. Blanda had been asked to provide the examination findings that led to his imposition of a no heavy lifting restriction, an explanation as to how his findings impacted Mr. Hayes's ability to function at home and in the workplace, an updated treatment plan for a safe return to work, and the estimated return to work date without restriction, but he had not provided the requested information.  LINA then stated that the medical information obtained did not demonstrate a functional impairment beyond November 25.  LINA supported this statement with references to the essentially normal findings – except for subjective complaints of pain – at Mr. Hayes's November 23, 2016 visit with Dr. Blanda.  LINA noted that "[t]here was no formal indication that you were restricted from working or had specifics [sic] restrictions placed on you from November 28, 2016 through January 3, 2017."  In conclusion, LINA stated that "we do not have clinical evidence to support an impairment of such severity that would meet the

definition of disability and preclude you from performing your job duties as an Equipment Operator."

Mr. Hayes presented three arguments objecting to LINA's decision. First, he argued that Dr. Blanda's report of November 23, 2016 did not provide sufficient grounds to deny STD benefits. This Court finds, however, that LINA's explanation for its denial of STD benefits is based on a proper interpretation of the Plan, is supported by substantial evidence, and was not arbitrary or capricious. This Court further finds that Dr. Blanda's opinion that Mr. Hayes could return to work, set forth in the work status report of November 23, 2016 and reiterated in the medical request form dated December 7, 2016, constitutes evidence sufficient to terminate Mr. Hayes's STD benefits.

Dr. Blanda released Mr. Hayes to return to work without restrictions. Although Mr. Hayes told LINA later that Dr. Blanda had actually instructed him not to lift anything heavy and had refused to sign off on documents acknowledging that Mr. Hayes was capable of performing the requirements set forth in Schlumberger's formal description of his job duties, the administrative record contains no evidence of any functional restrictions or limitations ever having been imposed on Mr. Hayes's activities by Dr. Blanda with one exception. On December 19, 2016, a representative of LINA spoke on the telephone with a nurse at Dr. Blanda's office who confirmed that Mr. Hayes should not do any heavy lifting but further stated that

Dr. Blanda was unable to say exactly what he could or could not do without a functional capacity evaluation. However, there is no evidence in the administrative record that Dr. Blanda ever reduced the heavy lifting restriction to writing, that he ever recommended that Mr. Hayes undergo a functional capacity evaluation, or that he ever complied with LINA's request that he explain the functional basis for his alleged restriction on Mr. Hayes's lifting of heavy objects.

A plain reading of the Plan provision quoted above reveals that a person who is released to full duty without restrictions is considered able to perform the duties of his job and, consequently, is not disabled. The only way to read Dr. Blanda's work status report of November 23, 2106[106] is to conclude that Mr. Hayes was capable of performing all of the tasks required by his occupation. Significantly, Dr. Blanda reiterated that opinion on December 7, 2016, when he provided LINA with a medical request form stating that Mr. Hayes "may return to regular duty work as of 11-28-16."[107] At that time, Dr. Blanda was Mr. Hayes's only treating physician, and he had seen Mr. Hayes in June, August, September, October, and November 2016. As noted above, the opinions of a claimant's treating physician are considered to be reliable evidence that should not be arbitrarily discredited. The administrative record contains no evidence rebutting Dr. Blanda's opinion that, as of November 28,

---

[106]    Administrative Record at 0181.

[107]    Administrative Record at 0177.

2016, Mr. Hayes was capable of returning to work without restrictions or limitations except for LINA's notes from a telephone conversation with an unidentified nurse in Dr. Blanda's office.   This Court will not allow notes from a telephone conversation with a nurse whose name does not appear in the administrative record to override two written opinions signed by Dr. Blanda.   This is particularly so because LINA asked Dr. Blanda to identify the findings that led to his imposition of a heavy lifting restriction, to explain how those findings impacted Mr. Hayes's ability to function at home and in the work place, to explain his treatment plan for a safe return to work, and to state a return to work date without restrictions, but there is no evidence in the record that Dr. Blanda ever provided the requested information. ERISA imposes no duty of a plan administrator to investigate a claim for benefits.[108] Therefore, the plan administrator was entitled to rely on the evidence that was in the record.   Accordingly, this Court finds that LINA properly interpreted the relevant Plan provision and properly determined that Mr. Hayes was no longer disabled as of November 28, 2016.

Mr. Hayes's second argument is that his failure to see a doctor between November 23, 2016 and January 3, 2017 was not a valid basis for terminating his STD benefits.   While LINA's representatives noted in the administrative record that

---

[108]    *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 511 (5th Cir. 2013).

Mr. Hayes had no medical treatment between November 23, 2016 and January 3, 2017, this was not a reason stated by LINA in its January 27, 2017 letter for terminating Mr. Hayes's STD benefits.  To the extent that this argument is based on comments set forth in LINA's December 1, 2016 letter, this Court finds that the December 1 letter was not the denial of benefits decision appealed by Mr. Hayes. Therefore, this argument lacks merit.

Mr. Hayes's final argument is that the evidence in the record – except for Dr. Blanda's November 23, 2016 report – shows that Mr. Hayes cannot work.  Under the Plan, a person is disabled only if he meets two specific criteria.  He must be unable to perform the normal duties of his job due to an illness or injury and he must also be receiving appropriate care and treatment for that injury or illness.  In this case, the administrative record showed that Mr. Hayes had certain conditions of the neck and back for which he sought appropriate medical care.  But the office visit notes and reports provided by Dr. Blanda and Dr. Muldowny did not compare the results of their physical examinations against his job duties or provide opinions regarding whether his neck and back conditions prevented him from performing the tasks he was assigned on the job.  The medical records documented that Mr. Hayes complained of pain.  A thoracic MRI of August 5, 2016 showed slight disc protrusions at T6-7 and T7-8 as well as edema of the paraspinous muscles at their insertion at the T3 and T4 spinous processes.  An MRI of the cervical spine obtained

on September 30, 2016 showed mild cervicothoracic levoscoliosis and disc and uncinate pathology resulting in minimal right C2-3 foraminal stenosis; moderate right C3-4 foraminal stenosis; mild left and moderate right C4-5 foraminal stenosis; and moderate right C5-6 foraminal stenosis.   None of Mr. Hayes's office visits showed an impaired range of motion in his arms or legs (except due to guarding against pain), strength or muscle tone deficits, or other indications of abnormal gait, posture, or balance.   Thus, none of the documents contained in the administrative record showed that Mr. Hayes was functionally impaired so that he was not able to perform the normal duties of his job.   According to LINA's notes from a telephone conversation with Dr. Blanda's nurse, Dr. Blanda was unwilling to opine on Mr. Hayes's functional capabilities without performing a functional capacity evaluation. However, Dr. Blanda never ordered such a test.   Dr. Muldowny did not order such a test either.   Both Dr. Blanda and Dr. Muldowny opined that Mr. Hayes should not be at work, but neither of them connected their opinions to specific examination findings or functional limitations.   Therefore, contrary to Mr. Hayes's argument, the weight of the evidence in the administrative record does not support the conclusion that he was unable to work after November 25, 2016.

## **Fees and Expenses**

Mr. Hayes included a prayer for reasonable attorneys' fees in his complaint. In its discretion, a court may award attorneys' fees and costs to either party in ERISA

litigation as long as the fee claimant has achieved some degree of success on the merits.[109]  Even when a party is eligible for fees under ERISA, however, a court should examine the facts of the case to determine whether a fee award is appropriate.[110]  In making such a determination, a district court may consider the following discretionary factors:  (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.[111]  "No one of these factors is necessarily decisive,"[112] and district courts may make fee determinations without evaluating these considerations.[113]  In this case, Mr. Hayes did not achieve any degree of success on

---

[109]    29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co*., 560 U.S. 242, 245 (2010); *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc*., 892 F.3d 719, 734 (5th Cir. 2018).

[110]    *Victory Med. Ctr. Houston, Ltd. P'ship v. CareFirst of Maryland, Inc*., 707 Fed. App'x 808, 809-10 (5th Cir. 2018).

[111]    *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

[112]    *Iron Workers Local No. 272 v. Bowen*, 624 F.2d at 1266.

[113]    *LifeCare Management Services LLC v. Insurance Management Adm'rs Inc*., 703 F.3d at 846; *Hardt v. Reliance Standard Life Ins. Co*., 560 U.S. at 254-55.

his claim.    Accordingly, regardless of any factors that might otherwise be considered, he is not entitled to recover attorneys' fees or expenses.

## **Conclusion**

For the foregoing reasons, this Court finds that the Plan administrator did not abuse its discretion in deciding Mr. Hayes's claim for STD benefits.  Accordingly, this Court finds that Mr. Hayes's claim lacks merit and

IT IS RECOMMENDED that Mr. Hayes's claim should be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.[114]

       Signed at Lafayette, Louisiana, this 17th day of September 2019.

                                 _____

                                 PATRICK J. HANNA

                                 UNITED STATES MAGISTRATE JUDGE

---

[114]     See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).